

FILED

MAR 22 2010

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CIV. 07-4111 |
| | \* | |
| Plaintiff, | \* | MEMORANDUM OPINION |
| | \* | RE: COURT TRIAL AND |
| vs. | \* | PROPOSED FINDINGS, |
| | \* | CONCLUSIONS AND DISPOSITION |
| GLEN R. BOSCALJON, Individually | \* | |
| and on behalf of the Glenmar Trust; | \* | |
| and MARLENE BOSCALJON, | \* | |
| Individually and on behalf of the | \* | |
| Glenmar Trust; | \* | |
| | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The United States of America brought this civil action against the defendants, Glen R. and Marlene Boscaljon, for the following purposes: (1) to reduce to judgment certain unpaid federal tax assessments made against Glen R. Boscaljon and his wife, Marlene Boscaljon; (2) to set aside a certain conveyance of real property as fraudulent against the United States; (3) to obtain a determination that the Glenmar Trust is the nominee and/or alter ego of Glen R. and Marlene Boscaljon; and (4) to foreclose federal tax liens on certain real property. A court trial was held on these matters and the Court now proposes the following findings of fact, conclusions of law and disposition, and allows the parties an opportunity to submit objections to the proposed findings, conclusions and disposition and to submit certain findings and conclusions.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Factual Background

Glen Boscaljon (Boscaljon) was in business called Towne Cryer with a partner, Frank Russell, from about 1992 through 1994, selling billboard advertising space. Russell left the business and Boscaljon no longer has the business records of Towne Cryer. Boscaljon testified that Russell took the records from the office without his permission. However, no evidence was presented that Boscaljon attempted to subpoena or otherwise retrieve the Towne Cryer records from Russell. From

1994 until 1996 Boscaljon ran a restroom deodorization and sanitation franchise called Aire-Master. In 1993 Boscaljon sold Alpine Air purifiers. In 1994 Boscaljon worked in sales for Kaire International products. From 1998 to the present Boscaljon sold Melaleuca home and health products and received a Form 1099 from Melaleuca.

Marlene Boscaljon (Marlene) was employed by Whiffers, Inc. in Sioux Falls in 1993 and 1994. Her W-2 Statements for 1993 and 1994 show that federal income tax, social security tax and Medicare tax were withheld by Marlene's employer. Gov. Ex. 5 and 6.

Boscaljon and his wife Marlene jointly filed tax returns on May 3, 1994, for 1993. On April 15, 1995, the couple filed joint tax returns for 1994. However, from 1995 through 2003 they never filed a timely tax return and did not file a timely tax return until 2005 when returns were filed for the previous years.

In 1995 Boscaljon, after seeing an advertisement, purchased a trust document form from Willie Watts, the Creator of Sovereignty Pure Trusts. Watts was convicted in Federal District Court in California in 2005 of conspiracy, mail fraud, and failure to file income tax return arising out of a scheme to misrepresent to taxpayers that trusts sold by him would legally protect income and assets from taxation. Ex. 127, 128. In October of 1995 the Glenmar Trust in issue in this case was created. Gov. Ex. 100. Article XXIII of the Glenmar trust document provides: "This 'Trust Estate' shall have no tax liability in any jurisdiction which is foreign to the freely associated compact state of America, in which this 'Trust Estate' is domiciled."

Boscaljon and Marlene were named General Managers and Managing Trustees of the Glenmar Trust and Constance Kenyon, the mother of Boscaljon's grandchild, was appointed Protector of the Glenmar Trust. Boscaljon's residence at 2204 South Hawthorne in Sioux Falls, South Dakota and adjacent property, were transferred to the Glenmar Trust on October 24, 1995, for consideration of "ten dollars and other valuable considerations." (Gov. Ex. 113). Boscaljon and Marlene continued to reside at this residence and resided there at the time of the trial. The mortgage on the residence was in the name of Boscaljon and Marlene until the mortgage was satisfied in 2001. Boscaljon and Marlene have always paid the utilities on the property from their personal checking accounts. Property in Garretson, South Dakota, which was owned by Boscaljon and Marlene was also transferred to the Glenmar Trust. The Aire-Master business was also transferred to the Glenmar Trust. Although Boscaljon contrends that the trust had its own bank account, no evidence of a bank

account has been presented to the IRS or to this Court. No tax returns were filed by Boscaljon for the Glenmar Trust and Boscaljon maintains that this was the responsibility of the trustees. Boscaljon introduced into evidence minutes of the proceedings of the Trustees of the Glenmar Trust from 1995 through 2006. Defendants' Exhibit A. Glen Boscaljon knew of the tax audit at the time the trust was created, although he testified that no notices of deficiency from the IRS were received at the time the trust was created. Marlene Boscaljon did not know of the tax problems at the time the trust was created. The Government challenged Marlene Boscaljon as to whether it was her signature that appeared on Defendants' Exhibit B, a Residential Lease between the Glemar Trust and the Boscaljons for the property at 2204 South Hawthorne. Both Boscaljons testified that the trust was created to avoid inheritance problems with their blended family.

A letter dated September 15, 1995, was sent by the Internal Revenue Service to Defendants Glen and Marlene Boscaljon advising that their federal income tax return had been selected for examination. Gov. Ex. 92. The letter set forth an examination date of September 25, 1995, and advised the Boscaljons to call within 10 days of receipt of the letter to confirm the appointment. The letter set forth that Timothy Ness was the person to contact and gave Ness' telephone number. It is undisputed that Glen Boscaljon received this letter and did not call Ness. Boscaljon contends that he wrote Ness to reschedule the appointment. Gov. Ex. 94 is a letter from Glen Boscaljon to the Director of the I.R.S. stating that he would be out of the state in September and October of 1995 and that the appointment should be rescheduled. In September of 1995 Glen Boscaljon sent letters to the IRS challenging the authority of the IRS. Gov. Ex. 93, 95. In May of 1996, Glen Boscaljon sent another document challenging the authority of the IRS and Marlene witnessed this document. Gov. Ex. 96.

Timothy Ness conducted the audit without either of the Bosaljons being present or supplying documents. Some of the documentation considered by Ness was no longer available at the time of trial. Ness is no longer an employee of the IRS and neither the United States nor the Boscaljons called him as a witness at the September 2009 trial.

In March of 1997 the IRS sent the Boscaljons a Notice of Deficiency by certified mail. Gov. Ex. 99. The Notice advised that for the year ending on December 31, 1993, the Boscaljons owed $33,434 in taxes, and $8,627 in penalties. The Notice further advised that for the year ending on December 31, 1994, the Boscaljons owed $13,429 in taxes, and $1,966 and $2,663 in penalties. The

3

Notice advised that if the Boscaljons wanted to contest the determination in United States Tax Court they would have 90 days from the determination to file a petition with the United States Tax Court for a redetermination of the deficiencies. The Explanation of Adjustments which accompanied the Notice revealed that all claimed deductions of the 1993 and 1994 returns were disallowed because the Boscaljons did not furnish information to support the claimed deductions. The Boscaljons did not file a petition with the United States Tax Court.

A Notice of Federal Tax Lien was prepared on June 15, 2007, and filed with the Register of Deeds for Minnehaha County. Gov. Ex. 108. This Notice of Federal Tax Lien listed the Glenmar Trust, as Nominee of Glen R. Boscaljon, as the taxpayer, and listed an unpaid balance of assessment of $53,166.84 for the tax period ending December 31, 1993, and $18,230.50 for the tax period ending December 31, 1994. A Notice of Federal Tax Lien Refiling was prepared on October 21, 1997, and filed with the Register of Deeds for Minnehaha County. Gov. Ex. 106. This Notice of Fedeal Tax Lien Refiling listed Glen R. Boscaljon and Marlene E. Boscaljon as taxpayers and listed an unpaid balance of assessment of $53,166.84 for the tax period ending December 31, 1993, and $18,230.50 for the tax period ending December 31, 1994.

The Government filed this action in August of 2007 pursuant to Sections 7402 and 7403 of the Internal Revenue Code, seeking to foreclose its federal tax lien on the Boscaljon's residence at 2204 South Hawthorn Avenue in Sioux Falls, South Dakota. The Complaint and Amended Complaint (Doc. 19) allege a balance of liability for tax, penalty and interest of $117,266.26 for the tax year of 1993 and $41,136.92 for the tax year of 1994, for a total liability of $158,403.18. Joe Boyer, an Internal Revenue Service employee who works in collections, testified at trial that he had last valued the residence at 2204 South Hawthorn Avenue at about $175,000.

Ericka Tran-Hunstead, an examiner for the IRS, completed an Income Tax Adjustment on August 30, 2009. She concluded that for the 1993 tax year the Boscaljons owed $68,877.56 for tax, penalties and interest, and that they owed $123,680.32 for tax, penalties and interest for the 1994 tax year. Gov. Ex. 7. Exhibit 8 is a summary of what deductions were allowed. No adjustments were made by Ms.Tran-Hunstead for the Town Cryer income tax liability. Ms. Tran-Hunstead testified that she worked on the tax adjustments in this case almost exclusively from the end of July until the time of trial and supporting documents for the August 30, 2009 Income Tax Adjustment were received into evidence.

Fay Anderson, who has 43 years of accounting experience and who was an enrolled agent for the IRS up until a month before trial, testified at trial. Glen Boscaljon had contacted Anderson in 2005 and asked him to help get tax returns filed with the IRS. Anderson had Boscaljon submit all bank statements and deposit slips to him. Anderson prepared amended Form 1040 tax returns for the Boscaljons for the tax years of 1993 and 1994 which were received into evidence as Defendants' Exhibits C and D. Anderson concluded that the Boscaljons did not owe tax for those years. He testified that the difference between his opinion and that of the IRS was that he accepted as business expenses items for which there were checks and for which he got a reasonable explanation for the checks.

Glen and Marlene Boscaljon were both 74 at the time of the September 2009 trial. Glen Boscaljon has suffered a heart attack, has been diagnosed with cancer, and had just finished chemotherapy at the time of trial. His income now comes from Social Security and direct sales. At the time of trial the IRS was taking 38% of Boscaljon's social security income. Marlene Boscaljon was working for $8.75 an hour 20 hours a week at Prometric.

Tax Assessments Presumed Correct

"Tax assessments made by the IRS are presumed correct and the taxpayer bears the burden of proving, by a preponderance of the evidence, that the assessment is erroneous." *North Dakota State Univ. v. United States*, 255 F.3d 599, 603 (8th Cir.2001); *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 239 (8th Cir.1996). Ericka Tran-Hunstead prepared Form 4549A Income Tax Adjustments (Gov. Ex. 7) which found that the Boscaljons owed $68,877.56 for tax, penalties and interest for the 1993 tax year, and $123,680.32 for tax, penalties and interest for the 1994 tax year, and this supports an assessment for each of these years in these amounts. The reasoning and documentation provided by Ms. Tran-Hunsteads support her assessments. Taxpayers are required to maintain records and make them available to the IRS so that a determination of tax liability can be made. *See* 26 U.S.C. §§ 6001. While disallowing numerous deductions for lack of documentation may seem harsh since it is reasonable that a sales person would incur travel, cost of goods and other expenses, the IRS provided the Boscaljons an opportunity to take part in the original audit and to appeal to tax court at a time when more documentation was available. The Boscaljons did not take these opportunities. Even at the time of the court trial in this matter Boscaljon presented no evidence which would show that he made any effort to secure any of the documents he contends

5

were taken by Frank Russell. Although Fay Anderson presented what may be considered a reasonable method of coming to a different conclusion than what was presented by the IRS on some of the tax issues, the Defendants did not meet the burden of proving by a preponderance of the evidence that the assessment of the IRS was erroneous.

Glenmar Trust as Alter Ego of the Boscaljons

Reverse piercing of corporate veil is warranted in a collection action against individual taxpayers so that a trust may be held liable for the individuals' tax liabilities when the trust is an alter ego of the individuals. This reverse piercing of corporate veil is appropriate when there is evidence that the trust was merely a sham entity operated in a fraudulent manner, when there is a strong degree of identity between the taxpayers and the trust, and when no innocent individual would be harmed thereby. *See United States v. Scherping*, 187 F.3d 796 (8th Cir. 1999). The Court finds that the Glenmar Trust is a sham entity which was created for the purpose of evading income tax liability and which operated as the alter ego of the Boscaljons. No innocent individual would be harmed by holding the trust liable for the Boscaljons' tax liability. The prayer for relief in the Amended Complaint requests that this Court determine that any interest held in the property described in paragraph 4 of the Amended Complaint (the property at 2204 South Hawthorn Avenue) by the Glenmar Trust is held by it as the nominee and/or alter ego of Glen and Marlene Boscaljon, who are the true beneficial owners of the property. Based on the entire record of this case, this Court makes that determination.

Fraudulent Conveyance

Whether a transfer of property is fraudulent will be determined by state law. *See Carr Enterprises, Inc. v. United States*, 698 F.2d 952 (8th Cir. 1983)(applying South Dakota law on fraudulent conveyance issue). S.D.C.L. § 54-8A-4 provides in part[1]:

---

[1] S.D.C.L. § 54-8A-4(b) sets forth the following factors to which consideration may be given in determining actual intent:
> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

6

Any transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (ii) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The avoidance of taxation was a goal explicitly set forth in the Glenmar trust document. Although the Boscaljons have contended that the trust was established to avoid inheritance problems with their children, this explanation is not convincing in light of the contents of the trust document, the timing of its creation, and its operation, which allowed the Boscaljons to retain actual control and possession over the property which was purportedly transferred to the trust. Although the Boscaljons have denied that the transfer of their residence left them insolvent (Gov. Ex. 122), there is no evidence that the Boscaljons retained much if any property after transferring their residence and adjacent property, Garretson property, and Aire-Master business to the Glenmar trust. The transfer of the Boscaljons' residence and adjacent property, as described in paragraph 4 of the Amended Complaint, to the Glenmar Trust in October of 1995 was made with the actual intent to hinder, delay and defraud the IRS from collecting taxes from the Boscaljons, and constitutes a fraudulent conveyance. The transfer of this property is void and of no effect as to the just and lawful collection of the Boscaljons' tax debt to the IRS.

---

> (5) The transfer was of substantially all the debtor's assets;
>
> . . .
>
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred . . . .

These factors are nonexclusive consideration. *See Prairie Lakes Health Care System, Inc., v. Wookey*, 583 N.W.2d 405, 411 (S.D. 1998).

Foreclosure of Federal Tax Liens

The United States requests in its prayer for relief in its Amended Complaint that this Court determine and adjudge that the United States has valid federal tax liens on the real property described in paragraph 4 of its Amended Complaint, and foreclose those liens. After reviewing all of the evidence in this matter, 26 U.S.C. § 6331, and all other applicable law, this Court determines that the United States has valid federal tax liens on the real property described in paragraph 4 of the Government's Amended Complaint.

The South Dakota Constitution, Article 21 § 4, provides that the "right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law." S.D.C.L. § 43-31-1 provides that "a homestead with a value of less than one hundred seventy thousand dollars of a person seventy years of age or older, and the unremarried surviving spouse of such person, is exempt from sale for taxes for so long as it continues to possess the character of a homestead." However, "as against federal tax liens, homestead exemptions prescribed by state laws, are of no effect." *United States v. Heasley*, 283 F.2d 422, 427 (8th Cir. 1960).

26 U.S.C. § 7403(c), dealing with actions to enforce federal tax liens provides in part that a court "may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." In *United States v. Rodgers*, 461 U.S. 677, 708-709 (1983), this provision was construed as conferring a degree of equitable discretion in a § 7403 proceeding. In the *Rodgers* case, which dealt with a non-delinquent spouse's homestead interest[2], the Court set forth a non-exhaustive list of considerations for determining whether it was permissible to refuse to authorize a sale in a § 7403 proceeding and cautioned that district courts did not have "unbridled discretion" in the matter. 461 U.S. at 709. The Court also stated, "We can think of virtually no circumstances, for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself." *Id.* In a footnote to that

---

[2]In *United States v. Rodgers*, 461 U.S. at 690-691, the Supreme Court acknowledged that the Government lien under § 6321 cannot extend beyond the property interests held by the delinquent taxpayer.

8

statement the Court stated, "This is not to say that a forced sale may not be temporarily postponed, or made subject to an upset price, in order to do justice in an individual case." 461 U.S. at 709 n.39.

Defendant Marlene Boscaljon did not timely seek relief as an innocent spouse pursuant to the provisions of 26 U.S.C. § 6015. In addition, the innocent spouse issue was not raised in the Answer in this action. However, as the Supreme Court has stated, a "§ 7403 proceeding is by its nature a proceeding in equity," 461 U.S. at 708, and the Court has concerns with regard to the fairness of an immediate foreclosure sale of the residence as it pertains to Marlene Boscaljon. In the only tax return years which are before the Court, 1993 and 1994, the Boscaljons filed joint tax returns. The income Marlene Boscaljon earned working at a dress shop for Whiffers was subject to withholding. In addition, the Court finds that Glen Boscaljon took charge of responding to the IRS' 1995 request for examination and was responsible for setting in motion the events which have led to the position in which his 74-year-old wife is now placed.

In accordance with what the Court announced at the close of the trial in this matter, the Court is advising the parties of its position and requesting certain findings and conclusions from the parties. The Court is requesting that the parties submit specific findings and conclusions as to the sufficiency of the withholding in relation to the earnings of Marlene Boscaljon for the tax years 1993 and 1994, and whether and to what extent the Court may exercise its discretion in delaying the foreclosure sale of the home in which Marlene Boscaljon has resided for the past 24 years until such time as her housing needs can be appropriately met. The Court is also allowing the parties 10 business days from the filing of this memorandum opinion to submit objections to the findings and conclusions set forth in this memorandum opinion (identifying the findings and conclusions by page and paragraph) and to submit any additional findings and conclusions that they deem appropriate. The Court is also ordering the Government to submit a proposed partial Judgment in this matter. Accordingly,

**IT IS ORDERED**:

1. That title to the real property in question is held jointly by Glen Boscaljon and Marlene Boscaljon as joint tenants and not as tenants in common and the proposed transfer of title to that real property to Glenmar Trust is set aside as a fraudulent transfer.

2. That within the next 10 business days the parties submit specific findings and conclusions as to the sufficiency of the withholding in relation to the earnings

of Marlene Boscaljon for the tax years 1993 and 1994, and whether and to what extent the Court may exercise its discretion in delaying the foreclosure sale of the home until such time as Marlene Boscaljon's immediate needs can be appropriately met;

3. That within the next 10 business days the parties submit any objections they may have to the findings and conclusions set forth in this memorandum opinion (identifying the findings and conclusions by page and paragraph) and also submit any additional findings and conclusions deemed appropriate; and

4. That the Government submit a proposed partial judgment in this matter within the next 10 business days.

Dated this 22nd day of March, 2010.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY /s/ Colleen Schulte
Deputy